In re Albert W. MORSE, Debtor.

MAINE NATIONAL BANK, Appellant,

v.

Albert W. MORSE, et al., Appellees.

No. 82–9056.

United States Bankruptcy Appellate
Panels for the First Circuit.

June 7, 1983.

Robert Avaunt, Easton, Maine, for appellant, Maine Nat. Bank.

William H. Howison, for appellee, William H. Howison.

Ellsworth T. Rundlett, III, Portland, Maine, for appellee, Barbara M. Morse.

Before LAWLESS, Chief Judge, and GLENNON and LAVIEN, Bankruptcy Judges.

GLENNON, Bankruptcy Judge.

An appeal was taken from an order of the bankruptcy court dated September 17, 1982 which held the Chapter 7 trustee's ("trustee") rights in certain real estate to be superior to those of the plaintiff, Maine National Bank ("bank").

On October 10, 1973, the Bank loaned the debtor, Albert W. Morse ("debtor"), and his former wife, Barbara M. Morse, $28,000. The loan was evidenced by a promissory note and secured by a mortgage deed properly recorded in the Cumberland County Registry of Deeds on October 16, 1973.

In November of 1981, the debtor was in default on the note underlying the mort-gage. On November 23, 1981, a Bank employee mistakenly recorded a discharge of the mortgage due to an error by the bookkeeping department in transferring the account from an active one to a foreclosure account. Unaware of the mistakenly recorded discharge, bank counsel commenced foreclosure proceedings against the property. On December 10, 1981, a certificate of foreclosure was recorded in the Cumberland County Registry of Deeds and the complaint was served upon the debtor four days later. The debtor did not file an answer to the complaint.

On January 7, 1982, the debtor filed a Chapter 7 petition, listing the bank as a secured creditor on his schedules. Sometime later, the schedules were amended and the bank was listed as an unsecured creditor. The bank's claim is for $24,104.14 plus accrued interest. Subsequent to the filing of the Chapter 7 petition, the bank filed a complaint to determine the validity and priority of its mortgage. The complaint named the debtor, his former wife and co-signor of the note, Barbara Morse, and Edgar S. Catlin, III, Esq., in his capacity as trustee, as defendants.[1] The debtor did not file an answer to the complaint but, instead, indicated by letter that he did not intend to claim as exempt any portion of the subject real estate. Both the trustee and Barbara Morse filed answers to the complaint.[2]

The bankruptcy court held that although the trustee's status is determined by federal law,[3] his rights as against other parties claiming an interest in the real estate are to be determined by applicable state law. The

---

1. At some later point in time, Richard Joyce, Esq. was substituted for Edgar S. Catlin, III, Esq. as trustee. Subsequent to that appointment, William Howison, Esq. was appointed the trustee in bankruptcy. William H. Howison is one of the appellees in the instant action.

2. The bankruptcy court's order clearly states that the rights of the Bank against Barbara Morse are in no way established by that order.

3. 11 U.S.C. § 544(a) provides:
   (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obliga-

tion incurred by the debtor that is voidable by—
   (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such a creditor exists;
   (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; and

court noted that under Maine law, an unrecorded conveyance is ineffective "against any person except the grantor, his heirs and devisees, and persons having actual notice thereof."[4] Therefore, the deed could not be reformed and the trustee, as an intervening third party, i.e., as a hypothetical judicial lien creditor, was held to have rights in the property superior to those of the bank."[5]

■ The bankruptcy court properly recognized that although the trustee's status is conferred by federal bankruptcy law, his rights vis-a-vis other parties are to be determined by reference to state law. This point is well settled. *See, e.g., McCannon v. Marston,* 679 F.2d 13 (3d Cir.1982); *In re Gurs,* 27 B.R. 163, 10 B.C.D. 128 (Bkrtcy. 9th Cir.1983); *In re Minton Group, Inc.,* 27 B.R. 385, 10 B.C.D. 91 (Bkrtcy.S.D.N.Y.1983); *In re Steele,* 27 B.R. 474 (Bkrtcy.W.D.Wis. 1983); *In re Lewis,* 19 B.R. 548 (Bkrtcy.D. Idaho 1982); *In re Vezinot,* 20 B.R. 950 (Bkrtcy.W.D.La.1982); *In re TMIC Industrial Cleaning Co.,* 19 B.R. 397 (Bkrtcy.W.D. Mo.1982); *In re Elin,* 20 B.R. 1012 (D.N.J. 1982); *In re Midwestern Food Stores, Inc.,* 21 B.R. 944 (Bkrtcy.S.D.Ohio 1982) (applying Kentucky law); *In re Toledo,* 17 B.R. 914 (D.P.R.1982); *In re Richardson,* 23 B.R. 434, 9 B.C.D. 895 (Bkrtcy.D.Utah 1982); *Federal National Mortgage Association v.*

*Westmoreland,* 19 B.R. 130 (Bkrtcy.N.D.Fla. 1981); *In re Ireland,* 14 B.R. 849 (Bkrtcy.M. D.La.1981); *In re Gringeri Brothers Transportation Co.,* 14 B.R. 396 (Bkrtcy.D.Mass. 1981) (Act case analyzing Act § 70(c)); and *In re Harms,* 7 B.R. 398 (Bkrtcy.D.Colo. 1980).

■ In construing the rights of the trustee as a hypothetical bona fide purchaser and creditor under state law as against other parties, the phrase "without regard to the knowledge of the trustee" found in 11 U.S.C. § 544(a) does not give the trustee any greater rights than he, or any other person would have as a bona fide purchaser or creditor under applicable state law. *See Marston v. McCannon, supra; In re Gurs, supra; In re Minton Group, Inc., supra; In re Jones,* 20 B.R. 988 (Bkrtcy.E.D.Pa.1982); and *In re Richardson, supra.* That phrase in § 544(a) means without regard to any *personal knowledge* the trustee may have. *See Marston v. McCannon, supra.* It does not bear upon how the Maine courts have consistently construed the Maine recording statute, for they are two different issues.[6] We conclude therefore, that the bankruptcy court should have gone one step further and should have taken into consideration the words "actual notice" contained in the statute as defined by Maine courts. In this regard, "actual notice"

(3) a bona fide purchaser of real property from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists.

4. Me.Rev.Stat.Ann. tit. 33 § 201 ("statute") provides, in relevant part:
 No conveyance of an estate in fee simple, fee tail or for life, or lease for more than 2 years or for an indefinite term is effectual against any person except the grantor, his heirs and devisees, and *persons having actual notice* thereof unless the deed or lease is acknowledged and recorded in the registry of deeds within the county where the land lies, and if the land is in 2 or more counties then the deed or lease shall be recorded in the registry of deeds of each of such counties, and in counties where there are 2 or more registry districts then the deed or lease shall be recorded in the district legal for such record. Conveyances of the right, title or interest of the grantor, if duly recorded, shall be

as effectual against prior unrecorded conveyances, as if they purported to convey an actual title. All recorded deeds, leases or other written instruments regarding real estate take precedence over unrecorded attachments and seizures (emphasis supplied).

5. That decision is reported at 23 B.R. 160 (Bkrtcy.D.Me.1982).

6. The case of *In re Kelly,* 29 B.R. 708 (D.Me. 1983) was brought to the Panel's attention pursuant to Rule 28(j) of the First Circuit Rules governing appeals from bankruptcy judges to appellate panels by the appellee, William H. Howison. In that case Judge Goodman stated that "§ 544 provides the trustee with the status of creditor or purchaser without knowledge, *i.e.,* without *actual notice."* *Id.* at 710. We are not, however, considering the *Kelly* case at this time and make no comment as to its interpretation of § 544. It may well be that the *Kelly* case is readily distinguishable on its facts.

necessarily involves the rule that a purchaser before buying should clear up the doubts which apparently hang upon the title, by making due inquiry and investigation. If a party has knowledge of such facts as would lead a fair and prudent man, using ordinary caution, to make further inquiries, and he avoids the inquiry, he is chargeable with the notice of the facts which by ordinary diligence he would have ascertained. He has no right to shut his eyes against the light before him. He does a wrong not to heed the "signs and signals" seen by him. It may be well concluded that he is avoiding notice of that which he in reality believes or knows. Actual notice of facts which, to the mind of a prudent man, indicate notice—is proof of notice.

*Knapp v. Bailey,* 79 Me. 195, 204, 9 A. 122, 124 (1887). *See also, Dumais v. Gagnon,* 433 A.2d 730, 736 (1981) (quoting *Knapp v. Bailey, supra* ); *Rowe v. Hayden,* 149 Me. 266, 101 A.2d 190 (1953) and cases cited therein; *Hopkins v. McCarthy,* 121 Me. 27, 29, 115 A. 513, 515 (1921) ("actual notice is that which one who is put on a trail is duty bound to seek to know, even though the track or scent lead to knowledge of unpleasant and unwelcome facts"); and *Butler v. Stevens,* 26 Me. 484, 489 (1847).

By the wording of the statute, neither purchasers nor creditors who are deemed to have actual notice of an unrecorded interest are protected. *See Gagner v. Kittery Water District,* 385 A.2d 206, 209 (D.Me.1978) ("[w]hen the facts known to the purchaser cast doubt upon the very existence of the seller's title, he is bound to inquire of him whether he has any real title or not"); *Devine v. Tierney,* 139 Me. 50, 54, 27 A.2d 134, 136 (1942) ("[w]here an intending purchaser has actual notice of any fact sufficient to put him on inquiry as to the existence of some right or title in conflict with that which he is about to purchase he stands charged with notice of that which inquiry would have revealed by the exercise of ordinary diligence"); *Banton v. Shorey,* 77 Me. 48, 50 (1885) ("statute is for the benefit and protection of *all persons* who have any interest in examining the record

...") (emphasis supplied); *Rich v. Roberts,* 48 Me. 548, 551 (1860) ("actual notice of the existence of the ... mortgage, to an attaching creditor, might supercede the necessity of a record, so far that his attachment could not prevail"); *McLaughlin v. Shepherd,* 32 Me. 143, 148 (1850) ("attaching creditor is chargeable with notice in the same manner, and with like effect, as a subsequent purchaser"); *Copeland v. Copeland,* 28 Me. 525 (1848); *Matthews v. Demerritt,* 22 Me. 312, 317 (1843) ("attaching creditor may not have the same motives, or the same opportunity, to make inquiries respecting an apparent defect of title, as a second purchaser. But he must be regarded as such; and the law will not give him any superior rights") and *Evans v. Chism,* 18 Me. 220 (1841). *See also* IV American Law of Property, § 17.9 at 555 and § 17.29 at 611 (1952).

Maine law has long recognized that purchasers and attaching creditors having actual notice of a defect in title are chargeable with that which they could have ascertained by inquiry. The circumstances which require such inquiry are to be determined by the facts of each case. *See Gagner v. Kittery Water District, supra; Devine v. Tierney, supra;* and *Porter v. Sevey,* 43 Me. 519 (1857). We think that under the facts of this case, any person seeking the status of a bona fide purchaser or attaching creditor would be chargeable with all that an inquiry of the Bank would reveal. A purchaser or creditor who searched the records would have discovered an obvious inconsistency. To wit: a discharge of a mortgage followed shortly thereafter by a certificate of foreclosure as to the mortgaged property. At that point, one could not ignore this inconsistency in the hopes of avoiding that which further inquiry would reveal. The state of the record was such that no one could defeat the claim of a prior party. For, in the words of *Knapp v. Bailey, supra,* one "is chargeable with the notice of the facts which by ordinary diligence he would have ascertained." *See also Ricker v. United States,* 417 F.Supp. 133, 140 (D.Me.1976) ("a purchaser ... cannot claim protection as a bona fide purchaser where ... it appears from documents and facts

known at the time of purchase that there may be a substantial defect in the seller's claim of title").

■ We recognize that Maine courts will not reform an instrument where to do so would extinguish rights of innocent third parties. *See, e.g., Williams v. Libby,* 118 Me. 80, 105 A. 855 (1919). *Cf. Foster v. Kingsley,* 67 Me. 152 (1877). However, as set forth above, the trustee as a prospective bona fide purchaser or encumbrance may not be deemed an innocent party. In *Federal Land Bank of Springfield v. Smith,* 129 Me. 233, 237, 151 A. 420, 421–422 (1930), the court quoted *Louisville Joint Stock Land Bank v. Bank of Pembroke,* 225 Ky. 375, 9 S.W.2d 113 (Ky.1928), as follows:

> It is the general rule that, where a mortgage has been released or satisfied through accident or mistake, it may be restored in equity and given its original priority as a lien, provided the granting of such relief does not operate to the detriment of intervening rights of third persons who may have relied upon the release and *who are not chargeable with notice* of the mistake or who will not be prejudiced by reinstatement of the lien (emphasis supplied).

*See also Whitman v. Weston,* 30 Me. 285 (1849); and 59 C.J.S. *Mortgages* 348 (1949): [7]

> Generally, where a mortgage has been released or satisfied through accident or a mistake, it may be restored in equity and given its original priority as a lien, but such relief cannot be obtained to the detriment of the intervening rights of an innocent third person who relied on such release *unless he is chargeable with notice* of the mistake (emphasis supplied) (footnotes omitted).

Therefore, any prospective creditor or purchaser, under Maine law, would have had actual notice of an inconsistency in the records of the Cumberland County Registry of Deeds as concerns the subject property. This notice holds the prospective creditor or purchaser chargeable with all that further inquiry as to the true state of the title would reveal. Here, further inquiry would have revealed that the bank was, in fact, the mortgagee of the property despite the recorded certificate of foreclosure. Thus, no purchaser or attaching creditor would have priority over the bank under Maine law as consistently applied by its courts. We hold, therefore, that the rights of the bank are superior to those of the trustee.[8]

Accordingly, the order of the bankruptcy court is reversed and the case is remanded to the bankruptcy court with instructions to enter judgment in accordance with this decision.

---

**7.** Moreover, while not crucial to this decision, it should be noted that the court in *Robinson v. Sampson,* 23 Me. 388 (1844) held that a discharge of a mortgage properly recorded is only prima facie evidence of its discharge and upon proof of one objecting to its discharge, the mortgage will be reinstated "even against subsequent mortgagees *without notice*" (emphasis supplied). Id. at 391.

**8.** Our opinion is strictly limited to the facts of this case and Maine law as applied thereto.